I hear you, hear you, hear you desirable. The public court in the second district is back in session for soon to adjournment. The Honorable Susan at Hutchinson provided promises in the case of Henry, the parentage of Cooper, William Hendershot, happily, Rachel Gale at the long Mr. Joseph Medlock, case number 2 15 on 9 16. All right, Miss Gail, you can have a seat. Yeah, we have asked you to appear this morning pursuant to a notice. And have you reviewed that notice and the petition for rehearing? I reviewed my motion for rehearing and the notice that I have is a single piece of paper. Right. I just want to make sure if I'm not mistaken. Yes, you are. And would you like to respond before we to avoid us addressing specific issues? Or do you just want to respond to the notice and our concerns? I would like the opportunity now to express myself. Thank you. First of all, your honors, I want to thank you for the opportunity for to be able to come before you and explain my behavior and my words that were written and filed in the motion for rehearing. I meant no disrespect to this court. I have dedicated my life to the practice of family law. I'm a family law litigator. For better or for worse, I am not an appellate attorney by practice. My practice of family law is obviously very passionate, very emotionally charged. And sometimes those passions cloud our judgment. I believe that is the case here. I believe my judgment was clouded. I believe that in my zealous advocacy, I overstepped my bounds with this court. Please know that none of my words or actions or anything contained within that motion for rehearing was meant willfully to disrespect this court. I do deeply respect the law. As I said, I've dedicated my life to it. And I deeply respect this court. And upon reflecting after receiving your motion, I've reflected and I've reread my motion for rehearing. And I am very sorry to wear the tongue. I am very sorry. Counsel, you realize when you file a pleading with the appellate court, or in particular here in this case a petition for rehearing, you're trying to make your case with the appellate court. Yes, sir. You're not trying to impress your client with sort of a scorched earth approach. And that's really what you did here. Yes, sir. You realize it was very unprofessional and very disrespectful. I do say that, Judge. I mean, you're making comments the court neglected its duty to thoroughly consider the evidence and passed off its responsibility? I mean, think about what you're saying here. I regret those words deeply, Judge. I apologize. One of the things I think that, other than the obvious and the deep regret that I have for offending the court, is I feel like I failed in my duty to my client. My sole purpose was to zealously advocate for my client, Joseph Metlock, and his little boy, Cooper. As I stated previously, my passions got the best of me, and I did overstep my bounds. I did use disrespectful language, and I deeply regret that. Counsel? Yes, ma'am. You've indicated that you don't regularly practice before the appellate court. However, if you took on this responsibility, don't you think it was your responsibility then to review other pleadings similar to these, to consult an appellate attorney about what the appropriate content was, the language, how you put something like this together? Yes, ma'am. And did you do that? I did, ma'am. I did review several of his comments. And you were counseled to use this kind of language in a PFR? I was not counseled not to, Your Honor. I did consult two appellate attorneys, and I did review several motions for rehearing. Did you see language like this in any of them? No, ma'am. Now, I want to clarify one thing. I think we all respect, and anybody who practices here in this court knows, that we appreciate zealous advocacy. And there's certainly nothing wrong with that. That's your responsibility and, indeed, probably your obligation. But remember, there is a point where zealous advocacy crosses the line and becomes offensive and disrespectful, and that's what happened. Do you understand that? I do, sir. I absolutely do. And I have reflected on it. I have reread it. And in hindsight, clearly I would never file anything with this tone, tenor, or with the words that were contained within it. I could have done my job significantly better than I did. You could have said the same things without the descriptive, insulting remarks. Absolutely. Absolutely. You know, I sat in divorce court for a number of years before the privilege of sitting on the appellate court and looked at a lot of pleadings. And quite frankly, I thought it was pretty rare to see language like this, even at the trial level, when referring to a court and how a court executed its responsibilities. It might be one thing when the attorneys were arguing in open court on motions in front of me, and unfortunately sometimes the attorneys attacked one another. But it was pretty rare that I heard attacks on the court and how the court executed its duties. So, honestly, it isn't just at the appellate level that this is inappropriate. It certainly is at the trial level also. Yes, ma'am, I acknowledge that. And all I can say is that another point of reflection for me is it doesn't reflect my character. In my everyday practice before the trial court, I perhaps in seven years have been admonished one time for raising my voice. I really have dedicated my life to professionalism, which is why when I reflect on this I am deeply disappointed in myself. I am very respectful. I have an excellent rapport with all of the judges in McHenry County, whether they be in civil court, in divorce court, or in criminal court. I do not use language like that when I advocate, even in a hearing. There are times when motions get, as Your Honor had indicated, motions get the best of us and we clash as attorneys. But as I've stated, I think one time I had clashed with a judge and it was remedied very quickly on my part. So are you assuring us that this would never happen again? It will never happen again. I absolutely assure you, and that was going to be one of my final points, is that when I look back, as I stated, first and foremost, I deeply regret that I've offended this court. Secondly, I deeply regret that I feel like I have failed my client. And I will never file anything like this. I will never even draft anything like this. It was completely counterproductive and it had the opposite effect of offending this court, which is clearly not what I desire to do. You let your emotions get the best of you. Yes, sir, I do. And as judges, we always tell each other, you know, you've got to be able to take a deep breath. You've got to be able to remain patient and dignified and professional at all times, regardless of the circumstances. Yes, sir. And typically, on a day-to-day basis, I'm in front of the judge litigating probably four or five days a week, and I'm preparing for two very emotionally charged divorce trials. And at the trial, even in this case, my emotions didn't get the best of me. And this was a very emotionally charged case. I was never admonished. The other side was admonished for erasing their voice. And that's not typically my character, which is why when I reflect on this, there's no excuse. And it is completely out of character for me, and it will never happen again. I'm very disappointed in myself. You know, you say you have not used this language or presented yourself this way before trial judges, and that has probably a lot to do with they're sitting right in front of you. Well, we're sitting right in front of you too. Yes, ma'am. And that is something you have to remember. And if you ever happen to see the Supreme Court, they're sitting right there too, and this is something that you have to be keenly aware of. The other thing I think that is important is in reading the disposition, it is obvious you read from your language what you wanted to read. The biggest problem you seem to have with us is we said that we had a limited record. We didn't say we didn't have any record, but we had a limited record. Because during the course of your trial court activity, you talked about the Gavel case continuously. You've questioned George Hendershot about the money that he gave to Rachel. You talked about the things that happened in the Gavel case, whether it was in Texas or here, and we have no knowledge of that other than your representations. If you wanted those issues considered properly, that record should have been in front of us. May I ask a further question? Well, let me just finish this part and then maybe I'll cover it. You also only provided us transcript from the actual last hearings and not the motions to reconsider that were filed, and there were three of them, I think two by you and one by opposing counsel. And things are said in that order or in the orders, one of them prepared by you, talking about a hearing, and we have nothing from those hearings to go forward on. We did, certainly some cases we can decide on the record, but as Justice Zinoff has pointed out in the Scarlet Z case, these cases have to be dealt with differently. They're all sui generis, and we need everything physically possible to make the correct decision. And so when we said we had a limited record, we meant limited record. We didn't say we didn't have any, and that's where I think you're both sort of capsized. You said we obviously didn't have the record, we were ignorant of the record, we had simply ignored our responsibility, ignored what record we did have, and that was very problematic. Yes, ma'am, I see that, absolutely. Now, do you have, I apologize, did I answer your question or are you? No, ma'am, it dovetails from what Your Honor had just stated. Part of what I was, what I'm confused about is the two binders of exhibits that had been admitted that contained the guardian ad litem's report and contained separately the report from the Texas case where everything was laid out and all of the facts and all of the, how the cases were intermeshed was all explained throughout the guardian ad litem's report and the attachments. So I think part of my confusion, Your Honor, was that I believed when I had provided the transcripts of all, or excuse me, the exhibits that had all been admitted and considered and discussed throughout the testimony, I thought that that was a complete enough record to provide for the court as they were, as exhibits were stipulated to by the other side. I was under the impression, obviously erroneously, that that would be sufficient. But Your Honor, if I'm correct, and I'm hearing you correct, Your Honor, stating that the motions to reconsider, and I believe there was only one filed for me, there were two motions to reallocate the guardian ad litem fees, but I was the only party that filed a motion to reconsider. If I'm hearing you correctly, I just want to make sure I don't misstate this, that Your Honor is stating that providing those transcripts for the motion to reconsider was, it made the record incomplete. Is that what I'm saying? Well, that's part of it. Okay. But also, you know, you've questioned Mr. Hendershot about the money that he was giving to his daughter. Correct. And whether it was income or in order to do the allocation and do some other things. And there are references to other cases, including the McHenry County gavel case, which Judge Gerhard is hearing. He knows what's happening. We don't. Yes, ma'am. There is a reduction in her visitation time that may be stipulated to, and they stipulated to the change of custody, apparently, or agreed to the change of custody. But we don't know why, and that was probably in a record somewhere that may have helped. And the point I'm trying to make is you cannot cherry pick those things that might be favorable to your client and not take things that might be favorable to the other side. If you want to appeal, you have the burden of going forward and giving us a complete record. You didn't do that. But that doesn't mean you didn't give us any record, and that seems to be how you read our disposition. So you need to pay attention to our language, and we certainly paid attention to yours. And so you do seem to have a great compassion for your clients, but compassion for your clients cannot invade the legal process. If you want to talk to them outside and you want to tell them what a great lawyer you are, that's fine. But you are not a great lawyer. You are not a compassionate lawyer, and as you indicated, you may do a disservice to your client by attacking the people that you want on your side. Yes, ma'am. And I don't know if that's what happened with Judge Gerhard and his decision. I have no way to talk to him about it, and I will not talk to him about it. He made his decision. Our issue was, was it against the manifest way to the evidence? And that's the standard that we reviewed. Do you understand that? I do, ma'am. May I ask one more question for clarification? Part of what, and this is maybe where, as Your Honor has stated, my boat capsized. You had stated in the opinion, I believe you wrote the opinion. I did. You had stated in the opinion that the recitation of the facts were limited because counsel only provided transcripts from the final hearings. So perhaps I misread it. Did Your Honor state, and maybe I can just pull it. It says we note that our recitation of the facts is limited because the appellant, Joseph, has submitted only transcripts from the final hearing dates. This case was alive two years before that final hearing. And whether there were transcripts of those other hearings that you could have secured or bystanders' reports for those other hearings where the judge heard other things that he or she, in this case Judge Gerhardt, could consider in his final disposition, we didn't have any idea. In several situations where an order was prepared, your name is at the bottom of that order saying you prepared it, and it talks about a hearing. Yes, ma'am. I don't know what happened at that hearing. It may have been very critical to you, very critical to Rachel. It could have been very important to Judge Gerhardt. Yes, ma'am. We then go on to say, however, we are able to resolve the issues in this appeal despite these omissions, though we lack context for some of the events described in the record. That's what I'm talking about. Okay. I think you read that as we didn't have a record. Yes, ma'am. I definitely misread that statement. I thought you were indicating that I had provided transcripts from the motion. I guess it doesn't matter what I thought. Clearly I was wrong in my impression, as you stated, my book capsized at that point. We try to use language that will be helpful to both counsel and parties. And I think losing a case and having to go forward is difficult. I don't deny that. But you cannot read into that, at least from where I'm sitting, that we lacked due diligence, we were ignorant, we ignored. I have a whole page of language that I thought was inappropriate. I have a feeling you know what they are. I actually wrote them down myself, Judge. Okay. All right. Justice Hudson, do you have anything else you'd like to say? I guess I would just like to conclude by stating that my conduct was not willful. It was naive. It was misguided. And as I stated, I let my passions get the best of me, and I acted in an unprofessional manner that has offended this court. I deeply apologize, and I would ask that the court not hold me in contempt. We appreciate your presence here today. We will issue a written disposition in this case and get it to you as soon as possible. I appreciate the opportunity. Again, Your Honors, I'm very sorry for my lack of professionalism. Thank you. Thank you. We'll stand adjourned at this time.